UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STELLA KONDO-DRESSER,

                     Plaintiff,

-- against --

BUFFALO PUBLIC SCHOOLS,

                     Defendant.

Index No.: **04-CV-0392(S)(Sr)**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**.

This action involves discrimination and harassment due to sex and race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII") and the New York State Human Rights Law, Executive Law § 290 *et seq.* (NYHRL), as well as retaliation for Plaintiff's exercise of her rights under Title VII and the NYHRL.

Plaintiff Stella Kondo-Dresser was discriminated against because she is female and Hispanic by her Assistant Principal Michael Morris and her Principal Fatima Morrell. She was retaliated against for complaining of this discrimination to her principals, superintendent, tenure area director, and the U.S. Equal Employment Commission. As a result, she received her only negative performance evaluation that eventually resulted in her principal

**STATEMENT OF FACTS**

See Plaintiff's Rule 56.1 Statement and Affidavit of Stella Kondo-Dresser in Opposition to Defendant's Motion for Summary Judgment for Plaintiff's statement of facts.

**ARGUMENT**

**I.    STANDARDS**

Summary judgment is inappropriate unless "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c);

1

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party in a summary judgment motion must demonstrate the absence of a genuine issue of material fact, and all inferences and ambiguities are resolved in Plaintiff's favor. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). *See also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

Furthermore, it has been noted frequently in this Circuit that "summary judgment is inappropriate when an individual's intent and state of mind are implicated." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d. Cir), *cert. denied*, 474 U.S. 829 (1985). This is particularly the case in employment discrimination cases. *See, e.g., Philippeaux v. North Central Bronx Hospital*, 871 F. Supp. 640 (S.D.N.Y. 1994). Additionally, "trial courts must be especially chary in handing out summary judgment in discrimination cases." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996). If any evidence exists in the record "from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Tomka v. Seiler Corp.*, 66 F. 3d 1295, 1304 (2d Cir. 1995).

There is also no dispute that Plaintiff relies on circumstantial evidence. Accordingly, the parties also agree the court should apply the three-step burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). First, Plaintiff must prove a *prima facie* case. This burden is *de minimis*. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203-204 (2d Cir 1995). Second, Defendant must articulate a legitimate, non-discriminatory reason for the employment decision at issue. Third, Plaintiff must prove the reasons offered by the defendant were not the true reasons, but were pretext for discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993);

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) (quoting *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973)).

"In order to avoid summary judgment, plaintiff need not prove the purported reasons were pretextual, but merely needs to raise a genuine issue of material fact as to this question." *Philippeaux v. North Central Bronx Hosp*, 871 F.Supp. 640, 651 (S.D.N.Y. 1994), *aff'd*, 104 F.3d 353 (2d Cir. 1996), *cert denied*, 520 U.S. 1105 (1997); See also *Wolf v. Ferro Corp.*, 772 F.Supp. 139 (W.D.N.Y. 1991); *Halbrook v. Reichold Chem. Inc.*, 735 F.Supp. 121, 124-25 (S.D.N.Y. 1990), aff'd, 956 F.2d 1159 (2d. Cir. 1992);. In *Vandewalker v. Quandt's Food Service Distributors, Inc.*, 934 F.Supp. 42, 46 (N.D.N.Y. 1996), the Court noted that summary judgment should be granted "only if the evidence of discriminatory intent is so slight that no jury could find in plaintiff's favor." (*quoting Viola v. Philips Medical Sys.*, 42 F.3d 712, 716 (2d Cir. 1994)).

Title VII makes it unlawful "for an employer to...discriminate against any individual..., because of such individual's race, color, religion, sex, or national origin." Title VII, 42 U.S.C. §2000e-2(a)(1).

When analyzing the order and allocation of proof in discrimination claims under Title VII, the courts apply the three-step burden shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 800 (1973) (*Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 (1981)) and clarified in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). The three-step framework applicable to Appellant's discrimination claim is as follows: First, Appellant must prove a *prima facie* case. Second, the Agency must articulate a legitimate nondiscriminatory reason for the employment decision at issue. Third,

Appellant must prove the reasons offered by the Agency were not its true reasons, but a pretext for discrimination. *St. Mary's Honor Center v. Hicks*.

To establish a *prima facie* case of disparate treatment, Plaintiff shows (1) she was a member of a protected group (e.g., female, Hispanic); (2) she was similarly situated with employees outside of her protected group (e.g., male, not Hispanic); and (3) she was treated differently than those employees. *Burdine* at 253-254; *McDonnell Douglas* at 802.

The burden of proof to meet the *prima facie* case is low. *Burdine*, 450 U.S. at 253 (the burden "is not onerous"). "The employee-plaintiff's successful satisfaction of this 'minimal' burden of establishing a *prima facie* evidence case gives rise to a presumption that the employer unlawfully discriminated against the plaintiff." *Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir. 1997), *cert. denied*, 522 US 1075 (1998)).

Title VII, 42 U.S.C. § 2000e, also prohibits retaliation for opposing discrimination or for making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under that statute. Plaintiff established a *prima facie* case of retaliation by showing (1) she engaged in a protected activity under Title VII; (2) Defendant was aware of her protected activity; (3) subsequently, she was subjected to adverse treatment by the Agency; and (4) a nexus exists between the protected activity and the adverse action. *Aragon v. Federal Deposit Insurance Corp.*, EEOC Appeal No. 01971846 (Jan. 21, 2000); *Neratko v. Frank*, 31 F. Supp. 2d 270, 290 (W.D.N.Y. 1998).

Proof of causal connection can be established directly (e.g., proof of retaliatory animus towards Plaintiff) or indirectly (protected activity followed closely by discriminatory treatment).

*DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.), *cert. denied*, 484 U.S. 965 (1987). The short amount of time between the complaint and Defendant's actions is enough to establish a causal connection. *Signer v. Tuffey*, 66 Fed.Appx. 232, 236 (2d Cir. 2003). *See also, Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001) (holding that a plaintiff's burden in establishing a *prima facie* case is a "light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement."); *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (holding that "proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").

Under *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000), "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Such sufficient evidence can include remarks showing a discriminatory animus, either when there is some relationship between the remarks made and the illegal action taken against the plaintiff, or when other evidence supports the finding of discriminatory intent. *See Danzer v. Norden Sys., Inc.*, 1998 U.S. App. LEXIS 16191 (July 15, 1998 2d. Cir); *Kirsch v. Fleet Street, Ltd.*, 1998 U.S. App. LEXIS 13516 (June 25, 1998 2d Cir.). *Kirschner v. Office of the Comptroller of N.Y.*, 973 F.2d 88, 92-93 (2d Cir. 1992) ("Statements by persons involved in the decision-making process which evince a discriminatory animus of the type alleged by the plaintiff are not ordinarily deemed stray remarks...and, even if [it] did constitute a stray remark, such a remark is indeed probative and may be considered by the fact-finder determining whether the plaintiff has carried her ultimate burden of persuasion).

## II.     PLAINTIFF HAS PROVED BOTH RACE AND SEX DISCRIMINATION.

Contrary to Defendant's contention, Plaintiff's race was known to Defendant. While it is true that she identified herself on Defendant's background check form (D's Exh. C) as "white," she has explained she did so because she was asked for "race," not ethnicity. (Dresser Aff. ¶ ; P's Rule 56.1 Stmt ¶ .) Plaintiff's understanding at the time was that race only referred to three categories: black, white, and asian. *Id*. Only when she filed with the EEOC did she discovered that Hispanic is treated as a race by the EEOC. *Id*.

Moreover, at the time Ms. Morrell supported her recommendation for Plaintiff's termination, she affirmatively knew what Plaintiff's race was. (Exh. 19.) In Exhibit 19, Ms. Morrell references Plaintiff's controversial lawsuit. At that time, March of 2003, Plaintiff was still before the EEOC. Accordingly, Ms. Morrell had to have been referring to Plaintiff's EEOC charge which clearly indicates Plaintiff's race as Hispanic. Moreover, Ms. Morrell responded to Plaintiff's EEOC charge indicating that Plaintiff was a "minority female," also clearly indicating by this time she affirmatively knew that Plaintiff was not "white." (See Exh. 21.)

Plaintiff also demonstrated she performed her job satisfactorily. Until she was discriminated and retaliated against by Ms. Morrell with a negative performance evaluation, there were only positive performance evaluations in her file. (Dresser Aff. ¶ ; P's Rule 56.1 Stmt ¶ ; Exhs. 22-23.)

Plaintiff was terminated. Accordingly, she suffered an adverse employment action. Moreover, after being "reinstated," she was not really reinstated. She continued not to have an official placement. (Dresser Aff. ¶ .) She also was left hanging with respect to her tenure status

from April of 2003 until mid-fall of 2003. (Dresser Aff. ¶ .)  Given the enormous amount of stress Plaintiff experienced from April of 2003 until her forced resignation on January 24, 2004, the environment obviously was altered for the worse for Plaintiff. (Dresser Aff. ¶ ; Exh. 28 (Plaintiff's resignation letter.)  So much so in fact, that she had to resign. *Id*.  A constructive discharge is still treated as a termination. *See Suders*, 542 U.S. .

Plaintiff also testified that at least the male librarian was treated more favorably than she with respect to how Mr. Morris spoke to her and otherwise treated her. (Dresser Aff. ¶ .)  For example, Mr. Morris did not pull in other male employees for frivolous meetings or meetings with hidden agendas. (Dresser Aff. ¶ ; P's Rule 56.1 Stmt ¶ .)

### III. PLAINTIFF WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT.

Plaintiff disputes Defendant's conclusion that Plaintiff fails to state a claim for a hostile work environment.  Plaintiff can show conduct "severe or pervasive enough to create an objectively hostile or abusive work environment" and she subjectively found it offensive, considering all of the circumstances. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  Plaintiff may show either that a "single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (*quoting Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).  A single incident can create a hostile work environment.  If the harasser "made his obscene comments only on one occasion, the evidence is that he did so at length, loudly, and in a large group." *Howley v. Town of Stratford*, 217 F.3d at 154.  *See also Torres v. Pisano*, 116 F.3d 625, 631 n.4 (2d Cir. 1997), *cert. denied*, 522 U.S. 997 (1997); *Tomka v. Seiler Corp.*, 66 F.3d at 1305.

Courts should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. at 23; *see also, National Railroad Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2074 (2002); *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998). At the same time, a "plaintiff need not present a list of specific acts." *Brennan v. Metropolitan Opera Association*, 192 F.3d 310, 318 (2d Cir. 1999) (*citing Torres v. Pisano*, 116 F.3d at 631, which held that "allegations of constant abuse" could be sufficient "even in the absence of specific facts about each incident").

To establish a prima facie case of a hostile work environment based on sex under Title VII, a plaintiff must show that "(1) the harassment was sufficiently severe and pervasive to alter the conditions of her employment, creating an abusive working environment, and (2) a sufficient basis for imputing the conduct that created the hostile environment to her employer." *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001). *See also Fitzgerald v. Henderson*, 251 F. 3d 345, 356 (2d Cir. 2001) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

A continuing violation exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998). The limitations period extends until the last discriminatory act in furtherance of it. *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). Indeed, a continuing violation may be found if there is evidence of a specific ongoing discriminatory policy or practice, or where the employer permits specific and related acts of discrimination to continue unremedied for so long as to amount to a discriminatory practice or

policy. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765-66 (2d Cir. 1998); *Cornwell*, 23 F.3d at 704. "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time-barred." *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir. 1996).

It is accepted that, "by its nature, a claim of 'hostile environment' discrimination turns on the existence of continuing violation." *Riedinger v. D'Amicantino*, 974 F. Supp. 322, 326 (S.D.N.Y. 1997) (citing cases). *See also National Railroad Passenger Corp. v. Morgan*, 122 S.Ct. at 2073 ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct"); *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) (continuing violation supported by the same evidence used to establish a hostile work environment claim). Under the continuing violation doctrine, "if a plaintiff has experienced a continuing practice and policy of discrimination the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F. 3d 345, 359 (2d Cir. 2001), *quoting Gomes v. Avco Corp.*, 964 F. 2d 1330, 1333 (2d Cir. 1992). A continuing violation may be found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.*, *quoting Cornwell v. Robinson*, 23 F. 3d 694, 704 (2d Cir. 1994). Even if courts do not favor continuing violation arguments, "'compelling circumstances' will warrant application of the exception to the statute of limitations." *Cavallaro v. Corning Inc.*, 93 F.Supp.2d 334, 338-339 (W.D.N.Y. 2000) (*quoting Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1415 (S.D.N.Y. 1989).

Plaintiff and Defendant did more than disagree about assignments. Even Ms. Morrell admitted that she improperly assigned regular education students to Plaintiff, yet still held her accountable for "servicing" them on her evaluation of Plaintiff. (Exh. 14; Morrell Dep. 1 , Dep. 2 , Dep. 3 .)

The harassment Plaintiff suffered being singled out as the only teacher to receive this treatment resulted in great emotional distress to Plaintiff and a discharge followed by a constructive discharge. (Dresser Aff. ¶ .)

## IV.   PLAINTIFF HAS ESTABLISHED A CONSTRUCTIVE DISCHARGE.

The intolerable working conditions have been detailed in Plaintiff's affidavit and foregoing sections. Plaintiff was subjected to teaching out of her area of certification. She was forced to teach regular education students, which caused her special education students to suffer. She also was unfairly evaluated by Ms. Morrell, which resulted in her termination. Ms. Morrell admitted she gave Plaintiff the unfair evaluation in part because Plaintiff complained of discrimination against her and Mr. Morris. (Morrell Dep. .)

## V.   RETALIATION

"Ms. Kondo-Dresser has failed to demonstrate a level of competence that would warrant granting her tenure... It should also be noted that Ms. Dresser is party to a controversial lawsuit filed against the district. The suit, among other things, alleges racial discrimination and inappropriate supervisory activities by the administration of School #31."

– Principal Fatima Morrell, commenting regarding her recommendation to deny Plaintiff completion of her probationary term and, thereby, deny her tenure, 3/26/2003 (Exh. 9.)

> I received a fax on 4/2/03 that Special Education teacher, Stella Dresser, is returning to school #31 on 4/3/03. This is a teacher who has continuously stated that she was out sick because this school's administration caused a hostile work environment for her. She has a contrived law suit pending against my assistant principal and I, in which she accuses us of racial discrimination and harassment. This will certainly create an uncomfortable work environment for myself and Mr. Morris. It is my sincere belief that Ms. Dresser will use this opportunity to further manipulate and embellish her contrived story. She interprets any administrative directives or supervision as harassment.
>
> Furthermore, without an entrance conference, I believe it is dangerous and highly unprofessional for Ms. Dresser to resume teaching duties at Stanton Academy #31.
>
> Please contact me as soon as possible.

– Fatima Morrell To: Susan Markel, cc: David Caban, Linda Rubenstein, Laura S. Dudley, Sheryl Blount-Carswell, 4/3/03 (Exh. 20.).

"Rather than assume responsibility for her own actions or perceived shortcomings [Plaintiff] consistently claims discrimination, harassment, and false accusations."

– Principal Morrell's "Response to 'Charge of Discrimination' (#165A300270) by Ms. Stella Kondo-Dresser," 3d page. (Exh. 21.)

In the recent decision *Burlington Northern v. White*, 548 U.S. ___, 126 S.Ct. 2405 (2006), the Supreme Court resolved the differing interpretations amongst the Circuit Courts of Appeal as to what the anti-retaliation provision of Title VII of the Civil Rights Act means. The Supreme Court adopted the "materially adverse" standard for retaliation claims. That is, the Supreme Court held employer actions are retaliatory if they "would have been materially adverse to a reasonable employee or job applicant" and "they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2409.

The Supreme Court held that the language of Title VII determines that the scope of Title VII's anti-retaliation provision must be broader than Title VII's anti-discrimination provision. *Id*. at 2410. Accordingly, while employment discrimination relates to terms, conditions, and privileges of employment, retaliatory conduct by employers violates Title VII regardless of its form or location. *Id*. at 2414. Whether a given act of retaliation is materially adverse will often depend upon the particular circumstances. *Id*. at 2417.

In *Burlington Northern*, the Supreme Court found that a temporary, unpaid suspension that eventually resulted in 37 days for which a grievance was sustained that resulted in reinstatement with full back pay and demotion from forklift operator was "materially adverse." *Id*. at 2417. Reassignment of duties, even within the same job description, can constitute retaliatory discrimination because almost every job category involves some duties that are less desireable than others. *Id*.

Much like Ms. White in *Burlington Northern*, Plaintiff was placed on indefinite administrative leave. While she was on paid leave, her status as an employee was in question. She testified to the great distress she suffered while on this administrative leave. (Dresser Aff. ¶ .) Not knowing her tenure status throughout the spring, summer, and fall of 2003, caused a recurrence of Plaintiff's gastric problems. She also was forced to resign from her position because of all the distress Defendant caused her. The Supreme Court found that even though Ms. White was reinstated with backpay, she was still entitled to compensatory damages for the time she was off work facing an unsure economic future. *Burlington Northern*, 126 S. Ct. 2417-2418.

Ms. Morrell's own words show she was well aware that Plaintiff was claiming she and Mr. Morris had discriminated against her. (Exhs. 19-21, in particular.) As the Supreme Court has

stated, Plaintiff does not need to prove a final adverse employment action such as Defendant contends. Instead, she need only prove one that a reasonable person in her circumstances would find materially adverse. A performance evaluation rife with false statements that results in a person's termination and public humiliation that results in significant time off from teaching, not being allowed to return to her school to finish out the semester, and being replaced by a non-Hispanic teacher is materially adverse. In particular, Plaintiff did not know for approximately 6 months what her tenure status actually was. The paid administrative leave ended in May of 2003. Accordingly, Plaintiff was faced with a great deal of economic uncertainty.

Ms. Morrell testified at length about how much false information was in the evaluation she did on Plaintiff. She could not support the vast majority of her comments, including, to nam but a few, that Plaintiff did not service students, was a borderline paranoid, never could be found, cries uncontrollably, mysteriously absent after being informed of an observation, does not plan (see Exh. 26), communicated inadequacies to Plaintiff. (Morrell Dep. 3 21-90; Dresser Aff.; Complaint.)

As discussed *supra*, Plaintiff was constructively discharged, thereby providing the concrete connection to terms and conditions of employment that Defendant demands, but the Supreme Court does not, to find retaliation for exercising rights under Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied because Plaintiff has established that Defendant discriminated against her because of her race and

stated, Plaintiff does not need to prove a final adverse employment action such as Defendant contends. Instead, she need only prove one that a reasonable person in her circumstances would find materially adverse. A performance evaluation rife with false statements that results in a person's termination and public humiliation that results in significant time off from teaching, not being allowed to return to her school to finish out the semester, and being replaced by a non-Hispanic teacher is materially adverse. In particular, Plaintiff did not know for approximately 6 months what her tenure status actually was. The paid administrative leave ended in May of 2003. Accordingly, Plaintiff was faced with a great deal of economic uncertainty.

Ms. Morrell testified at length about how much false information was in the evaluation she did on Plaintiff. She could not support the vast majority of her comments, including, to nam but a few, that Plaintiff did not service students, was a borderline paranoid, never could be found, cries uncontrollably, mysteriously absent after being informed of an observation, does not plan (see Exh. 26), communicated inadequacies to Plaintiff. (Morrell Dep. 3 21-90; Dresser Aff.; Complaint.)

As discussed *supra*, Plaintiff was constructively discharged, thereby providing the concrete connection to terms and conditions of employment that Defendant demands, but the Supreme Court does not, to find retaliation for exercising rights under Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied because Plaintiff has established that Defendant discriminated against her because of her race and

sex and in retaliation for exercising her rights under Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law.

Dated:     Cheektowaga, NY
           July 24, 2006

                                      Respectfully submitted,

                                      /s/Melanie M. Peterson
                                      Melanie M. Peterson, Esq.